IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **CAROL JOHNSON,**<br><br>　　　**Plaintiff,**<br><br>　vs.<br><br>**SIMON PROPERTY GROUP, INC., and SIMON PROPERTY GROUP, L.P.,**<br><br>　　　**Defendants.** | Civil Action No. 1:16-cv-03429-AT |

### DECLARATION OF MATTHEW W. HERRINGTON

Pursuant to 28 U.S.C. § 1746, Attorney Matthew W. Herrington hereby submits his declaration in support of Plaintiff's Unopposed Motion for Approval of Settlement in this FLSA Action.

1.

My name is Matthew W. Herrington. I am over the age of twenty-one (21) and suffer from no legal disabilities.

2.

I, together with Attorney Charles R. Bridgers and the law firm of DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC, have represented Plaintiff Carol Johnson in connection the above-referenced civil action since September 2, 2016.

1

3.

Based on my experience and training, I possess the requisite skills to adequately represent my client and to offer my professional opinion concerning the reasonableness of the number of hours expended in this case and the reasonableness of the hourly rate of $275 per hour sought to be recovered for my work.

**Mr. Herrington's Relevant Experience**

4.

I graduated with from the Florida State University in 2004 with a Bachelor of Arts in Russian, with Honors in the Major, and having been named Outstanding Undergraduate in Slavic in three different years. Beginning in 2004, I attended the Harvard University Graduate School of Arts and Sciences as a Ph.D. candidate, and received a Master of Arts degree in Slavic Languages and Literatures in 2008. After spending one year (2009-2010) in Daegu, South Korea, as an English instructor, I attended the University of Georgia School of Law in Athens, Georgia, where I was a recipient of multiple merit scholarships, and graduated *cum laude* in 2013. I have been a member in good standing of the State Bar of Georgia since October 2013.

5.

During my time at the University of Georgia School of Law, I spent two semesters working in the Criminal Defense Clinic where I assisted attorneys in the Western District Public Defender's Office on felony criminal cases in the Athens-Clarke County Superior Court. I also spent one semester in the Capital Assistance Project, during which time I drafted a motion for new trial for a client convicted of murder and sentenced to death in Walton County, Georgia. Additionally, I worked for numerous Atlanta criminal attorneys throughout law school drafting motions and appellate briefs in both federal and state courts. By the time I was admitted to the State Bar of Georgia, I had briefed approximately 6 appeals, including a murder appeal to the Supreme Court of Georgia and three federal criminal appeals to the 5th and 11th Circuit U.S. Courts of Appeal.

6.

Immediately after my graduation from the University of Georgia School of Law in 2013, through approximately October 31, 2014, I was an associate attorney employed by the firm of Smith & Collins, LLC, a general practice law firm in Atlanta, Georgia, where my practice focused on Fair Labor Standards Act, wrongful foreclosure, and general business litigation. Since November 1, 2014, I have worked at DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC

(formerly DeLong, Caldwell, Bridgers & Fitzpatrick, LLC) as an associate attorney. There, my practice has been overwhelmingly focused on Fair Labor Standards Act litigation, as well as litigation involving the Employee Retirement Income Security Act of 1974, the Family Medical Leave Act, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. I am a member of the Georgia chapter of the National Employment Lawyers Association (NELA-GA).

7.

During my career I have represented more than 170 clients in FLSA individual and collective actions. Representative FLSA cases include *Martin v. Jobo's, Inc. et al.*, 1:13-cv-4242-RWS (N.D. Ga.) (judgment for $67,483.10 plus $41,257.22 in attorney's fees and costs for bartender following successful bench trial); *Dean v. 1715 Northside Drive, Inc. et al.*, 1:14-cv-3775-CAP (N.D. Ga.) (partial summary judgment granted to exotic dancer, settlement for $100,000); *Mayes v. 1715 Northside Drive, Inc. et al.*, 1:14-cv-4004-MHC (N.D. Ga.) (settlement of FLSA minimum wage claims by waitress for $47,500); *Newell et al. v. IDK, Inc. et al.*, 1:14-cv-0219-TCB (N.D. Ga.) (confidential FLSA settlement on behalf of fifteen exotic dancers); *Drews v. Jobo's, Inc. et al.*, 1:14-cv-3774-ODE (N.D. Ga.) (settlement for $66,694 plus $25,223.03 in attorney's fees and costs for bartender);

*Hart v. WBY, Inc. et al.*, 1:15-cv-67-AT (N.D. Ga.) (confidential FLSA settlement for waitress approved by this Court); *Carter v. Doll House II, Inc. et al.*, Appeal No. 14-13132-AA (11th Cir.) (partial affirmance of trial court's denial of motion to compel arbitration); *Maxey v. Doll House II, Inc. et al.*, 1:15-cv-00053-MHS (N.D. Ga.) and *Carter v. Doll House II, Inc. et al.*, 1:14-cv-1097-MHS (N.D. Ga.) (confidential FLSA settlement of two related cases on behalf of seven exotic dancers); *Hensley et al. v. S.G.T., Inc. et al.*, 1:15-cv-77-RWS (N.D. Ga.) (confidential FLSA settlement of claims by two exotic dancers and one bartender); *Wynn v. International Follies, Inc. et al.*, 1:15-cv-3841-ELR (N.D. Ga.) (confidential FLSA settlement of claim by exotic dancer, approved by Court).

8.

I have previously appeared in the Northern District of Georgia in multiple motion hearings, a bench trial, and a jury trial. I have also personally argued before the U.S. Court of Appeals for the Eleventh Circuit. I regularly participate in mediations and have taken and defended dozens of depositions.

9.

My hourly rate of $275.00 per hour is reasonable and in line with the rates charged by other attorneys in the Atlanta area who possess similar skill, experience, and training. $275.00 per hour is the same rate that my firm bills my work at for hourly

clients. This rate has previously been approved as reasonable by multiple judges in the Northern District of Georgia. *See, e.g., Cook v. Statewide Wrecker Service, Inc.*, No. 1:15-cv-00101-ODE, Order, Dkt. No. 38 (N.D. Ga. July 8, 2015); *Forester v. Healthpons, Inc. et al.*, No. 1:15-cv-3378-ELR, Order, Dkt. No. 47 (N.D. Ga. March 20, 2017). The hourly rates of Charles R. Bridgers ($400.00) and our paralegals and legal assistants have similarly been approved by this Court as reasonable on multiple occasions.

## Work Performed on This Case

10.

I joined the firm of DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC in November 2014.

11.

Under the supervision of Charles R. Bridgers, I have performed the majority of the work on this case, including pre-suit legal research and investigation, drafting of pleadings and written discovery requests, examining Defendants' document production, calculating damages, conferring with opposing counsel, and corresponding with Plaintiff Johnson.

12.

With the assistance of Plaintiff Johnson, I conducted detailed damage calculations to prepare a settlement demand, and shared those calculations with defense counsel.

13.

Based on Plaintiff Johnson's recollection of her hours worked, I calculated her total unpaid overtime to be approximately $7,336, which assumes 7 hours of overtime each week over 131 weeks from September 12, 2013 through April 22, 2016.

14.

The settlement amount of $14,000 gross—$6,000 to Plaintiff and $8,000 in attorney's fees and costs—set forth in the accompanying agreement is appropriate in light of the risk that the Plaintiff faces that she might be found to have had exempt primary duties, and that a jury might find that she worked less overtime hours that she recalls.

15.

To date, our firm has incurred approximately $12,000 in attorney's fees and $400 in costs in prosecuting this action. Of the attorney's fees, $8,000 are my own.

16.

Our firm's retainer agreement with Ms. Johnson calls for the firm to retain 25% of her liquidated damages in exchange for advancing all costs of litigation.

17.

In order to facilitate settlement, our firm has reduced its fees and costs to a total of $8,000 and has waived the firm's portion of Plaintiff's liquidated damages.

18.

A copy of the executed Settlement Agreement is attached hereto as Attachment A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of April 2017.

>*/s/ Matthew W. Herrington*
>Matthew W. Herrington
>Georgia Bar No. 275411

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Carol Johnson ("Plaintiff") and Defendants Simon Property Group, Inc. and Simon Property Group, L.P. ("Defendants") (together with Plaintiff, the "Parties").

## RECITALS

**WHEREAS**, the Plaintiff filed a complaint asserting claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the alleged failure to pay overtime compensation (as further hereinafter defined, the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiff and Defendants, including all claims asserted in the Litigation;

**WHEREAS**, Defendants deny that they and/or any of their affiliated entities and/or Releasees have committed any wrongdoing or violated any federal, state, or local laws pertaining to payment of wages or hours worked; have vigorously disputed the claims asserted in the Litigation; and assert that they have strong and meritorious defenses to the claims in the Litigation; and

**WHEREAS**, the Parties have exchanged substantial amounts of information and data and have engaged in arms-length negotiations and reached an accord resulting in this Agreement; and

**WHEREAS**, Plaintiff's Counsel have analyzed and evaluated the merits of the claims made against Defendants in the Litigation. Based upon Plaintiff's Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiff; and

**WHEREAS**, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, risks, causes of action, claims, or demands based on putative violations of the FLSA as well as any state or local law (both statutory and common law), including without limitation all claims that were asserted or could have been asserted in the Litigation.

**WHEREAS,** this Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1

1. **DEFINITIONS**

    The defined terms set forth in this Agreement have the meanings ascribed to them below.

    1.1   "Attorneys' Fees and Litigation Costs" means all attorneys' fees and litigation expenses and costs which were advanced on behalf of Plaintiff and incurred in the Litigation by Plaintiff's Counsel.

    1.2   "Complaint" means the Complaint that was filed by Plaintiff in the Litigation.

    1.3   "Plaintiff's Counsel" means Charles R. Bridgers and Matthew W. Herrington, DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC.

    1.4   "Litigation" means the lawsuit of *Carol Johnson v. Simon Property Group, Inc. and Simon Property Group, L.P.* filed in the United States District Court for the Northern District of Georgia, Case No. 1:16-cv-03429-AT.

    1.5   "Order Granting Approval of Settlement" or "Approval Order" shall mean an order to be approved and entered by the Court, which gives approval to the Settlement and this Agreement, in a form substantially similar to the "Agreed Order on Unopposed Motion for Approval of Settlement Action and to Dismiss Action with Prejudice" attached hereto as Exhibit A.

    1.6   "Releasees" means Defendants, and their past, present, and future parents, divisions, affiliates, subsidiaries, predecessors, successors, and assigns, and each of its or their past, present and future directors, partners, principals, officers, members, shareholders, managers, fiduciaries, trustees, employee benefit plans and plan fiduciaries and/or administrators, insurers, reinsurers, employees, attorneys, and agents, and all persons acting by, through, under or in concert with any of them.

    1.7   "Released Claims" are all claims of any type that Plaintiff may have against Defendants, including any and all state and federal wage and hour claims that accrued during the Plaintiff's former employment as a Guest Services Manager ("GSM"), relating back to the full extent of the federal and state statutes of limitations and continuing through the date of court approval of the Settlement, including, but not limited to, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

    1.8   "Settlement" means the terms of the settlement as set forth in this Agreement.

    1.9   "Settlement Agreement" or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

2. **NO ADMISSION OF LIABILITY AND NO CONCESSION AS TO THE MERITS.**

    2.1   This Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, common law principle, administrative code, rule or

regulation, of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations contained in the Litigation and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Litigation or in any other action or proceeding. Defendants do not waive, and instead expressly reserve, their right to challenge Plaintiff's claims in the Litigation as if this Agreement had not been entered into by the Parties, in the event that the Court does not grant Approval or the Agreement becomes null and void pursuant to any provisions of Sections 5.1 or 5.2. The Parties expressly reserve all of their rights and defenses in such event. The provisions of this Agreement may be used by the Parties to enforce the terms of this Agreement, but this Agreement and any term(s) contained herein shall not be used as evidence in any other legal proceeding or for any other purpose whatsoever.

**3.   SETTLEMENT PAYMENTS**

**3.1**   As consideration from Defendants for the promises in this Agreement,

   (A)   Plaintiff shall receive the total sum of Six Thousand Dollars ($6,000) to be paid as follows:

   (1)   Within twenty-one (21) days of Court approval, Defendants will deliver to Plaintiff's counsel a check made payable to Carol Johnson in the amount of $3,000 representing her claim for unpaid wages, less any applicable payroll deductions and withholding, and for which Defendants will issue an IRS Form W2. A condition of this payment is Plaintiff's submission of an updated IRS Form W-4.

   (2)   Within twenty-one (21) days of Court approval, Defendant will deliver to Plaintiff's counsel a check made payable to Carol Johnson in the amount of $3,000 representing her claim for liquidated damages, without deduction, and for which Defendants will issue Johnson an IRS Form 1099 designating such payment in Box 3 "other income." A condition of this payment is Plaintiff's submission of an IRS Form W-9

   (B)   If approved by the Court, Plaintiff's Counsel shall receive Eight Thousand Dollars ($8,000), for alleged statutory attorney fees and expenses claimed in the Litigation. A condition of this payment is Plaintiff's counsel's submission of a completed IRS Form W-9.

**3.2**   None of the amount paid to Plaintiff and/or Plaintiff's Counsel shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendants, including for purposes of any bonus of any kind.

**3.3**   By signing this Agreement, Plaintiff hereby relinquishes any right to opt into and to participate in the approved settlement in the pending case of *Jeffrey Hall and Meagin Lewis, on behalf of themselves and all others similarly situated, v. Simon Property Group, Inc. and Simon Property Group, L.P.*, filed in the United States District Court for

the Southern District of Indiana, Cause No. 1:16-cv-1453-SEB-DML (the settlement of this case is referred to as the "Indiana Settlement"). Plaintiff understands that she eligible to participate in the Indiana Settlement, but hereby affirms that she rejects her option of participating in the Indiana Settlement. Plaintiff hereby directs the Administrator of the Indiana Settlement not to send her a settlement check, which Plaintiff understands would be for the approximate gross amount of $4,100. Plaintiff is entering into this Agreement in lieu of participating and accepting payment in the Indiana Settlement.

**4.  RELEASE OF CLAIMS**

**4.1**  Plaintiff forever and fully releases Releasees from all Released Claims.

**5.  VOIDING THE AGREEMENT**

**5.1**  If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Approval, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive, and Defendants shall have no obligations to make any payments under the Settlement or this Agreement.

**5.2**  A decision of the Court declining to approve or altering any material condition of this Agreement, which effects a fundamental change of the Parties' agreement (except as to any reductions in attorneys' fees) shall render this Agreement and the Settlement voidable and unenforceable as to all Parties herein at the option of any Party, except as to the provisions expressly stated in this Agreement as surviving. Each Party may exercise its option to void this Agreement and the Settlement by giving notice, in writing, to the other and to the Court within 10 days of the Court's Order disapproving or altering of any material condition, or 10 days after an order denying a motion for reconsideration or motion for approval of amended settlement terms. Unless the Parties agree in writing otherwise, in the event that the Agreement is not approved by the Court or the Settlement set forth in the Agreement is revoked, terminated, cancelled, declared void or fails to become effective in accordance with its terms, or if there is no Approval Order, the Parties will proceed at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, including, but not limited to as evidence, except as to the provisions expressly stated in this Agreement as surviving, and any Judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated, *nunc pro tunc*.

**6.  INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

**6.1**  No Assignment. Plaintiff's Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**6.2** Statements regarding Settlement. Plaintiff agrees that she will not initiate any communication disclosing the Settlement, but Plaintiff may answer any question regarding it by indicating simply that the case was settled or resolved, or words to that effect. She may also indicate in response to a question that information regarding the case is in the public court record.

**6.3** Entire Agreement. With the exception of the Separation Agreement and General Release that Plaintiff executed in favor of Simon Property Group, L.P. on April 25, 2016 (which shall remain in full force and effect), this Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. No waiver, modification, or amendment of any term, condition, or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by the Parties.

**6.4** Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**6.5** Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.6** Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.7** Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**6.8** Severability. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**6.9** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Georgia, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**6.10** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**6.11** Facsimile and Email Signatures. Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: April _11_, 2017           CAROL JOHNSON, PLAINTIFF

                                  _/s/ Carol Johnson_____

DATED: April _____, 2017          SIMON PROPERTY GROUP, L.P.

                                  By:_____

                                  Its:_____

DATED: April _____, 2017          SIMON PROPERTY GROUP, INC.

                                  By:_____

                                  Its:_____

6.11   Facsimile and Email Signatures. Any Party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

WE AGREE TO THESE TERMS,

DATED: April ____, 2017        CAROL JOHNSON, PLAINTIFF

                               _____

DATED: April _11_, 2017        SIMON PROPERTY GROUP, L.P.

                               By: _/s/ Michelle M Denson_____
                               Its: _VP-Compensation, Benefits, L&D_

DATED: April _11_, 2017        SIMON PROPERTY GROUP, INC.

                               By: _/s/ Michelle M Denson_____
                               Its: _VP-Compensation, Benefits, L&D_